# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | |
|---|---|
| Juan Antonio Sanchez, PC, on behalf of a class of similarly situated businesses and individuals,<br><br>Plaintiff(s),<br><br>v.<br><br>Bank of South Texas, JPMorgan Chase Bank, NA, and Frost Bank,<br><br>Defendants. | Civ. No. _____ |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Juan Antonio Sanchez, PC ("Sanchez PC") brings this class action on behalf of itself and those similarly situated (hereinafter "Plaintiff") against Defendants Bank of South Texas, JPMorgan Chase Bank, NA, and Frost Bank, for agent fees due to it from Defendants as a participant in the Federal Paycheck Protection Program ("PPP"). For its class action complaint ("Complaint"), Plaintiff alleges as follows based upon its knowledge, and upon information and belief including investigation conducted by its attorneys:

## PARTIES

1.      Plaintiff, Juan Antonio Sanchez, PC ("Sanchez PC"), is a professional corporation, organized and authorized to do business, and doing business, in the State of Texas since December 1994. Juan Antonio Sanchez ("Sanchez") is the owner of Sanchez PC and is a licensed CPA in good standing since 1987. Sanchez PC assists taxpayers and small businesses with taxes in McAllen, Texas and the surrounding communities.

2.      Bank of South Texas ("Bank of South Texas") is a Texas corporation. It conducts substantial business within this District and can be served at its principal office, 1421 East Nolana Avenue, McAllen, TX 78504.

3.      Defendant JPMorgan Chase Bank, NA ("Chase") is a Delaware corporation and federally-chartered bank. Chase conducts substantial business within this District.

4.      Defendant Frost Bank ("Frost") is a Texas State Financial Institution. Frost can be served through its registered agent for service, Trey Banack, 111 W. Houston St., San Antonio, TX, 78205. Frost conducts substantial business within this District.

5.      In this Complaint, when reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this Action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

7.      This Court has personal jurisdiction over Defendants because Defendants are residents of Texas, do business in this District, and/or a substantial number of the events giving rise to the claims alleged herein took place in Texas.

2

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiff applied on behalf of its clients for PPP loans while in this District, and Defendants marketed, promoted, and took applications for PPP loans in this District.

**FACTUAL ALLEGATIONS**

**A.    Background**

9.     On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus known as COVID-19.

10.    On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

11.    On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

12.    On March 27, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States that declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

13.    The Administration expressly recognized that with the COVID-19 emergency "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State and local public health measures that are being taken to minimize the public's exposure to the virus." *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 13 CFR Part 120, Interim Final Rule (the "Small Business Administration ("SBA") PPP Final Rule").

14.    On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act" or the "Act").  The CARES Act (P.L. 116-136) was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020.  This legislation included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and the SBA, a United States government agency that provides support to entrepreneurs and small businesses nationwide.

15.    As part of the CARES Act, the Federal Government created the $349 billion PPP for small businesses providing funds for loans to be originated from February 15, 2020 through June 30, 2020.  The PPP was created to provide American small businesses with eight weeks of cash-flow assistance, with a certain percentage forgivable if utilized to retain employees and fund payrolls. The loans are backed by the SBA, administered by Treasury, but funded by private lenders including banks and financial services firms ("Lenders").  Pursuant to the SBA PPP Interim Final Rule, the PPP is a limited funding program, as funds are provided on a "first come, first served basis."  *See* 13 CFR Part 120, p. 13.

16.    On March 19, 2020, Texas Governor Greg Abbott issued Executive Order GA-08 (the "Directive") for the State to prevent the spread of COVID-19.   Shortly before the GA-08 Directive expired, on March 31, 2020, Governor Abbott issued Executive Order GA-14 extending the Directive until April 30, 2020.

17.    Treasury announced on April 3, 2020 that small businesses and sole proprietors could apply and receive loans to cover their payroll and other expenses through approved SBA

Lenders.    Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well[1].

18.    On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added an additional $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

19.    Treasury's PPP Information Sheet (Lenders) (the "PPP ISL"), consistent with the SBA PPP Final Rule (collectively, the "SBA Regulations"), creates a system with three (3) participants: (a) a Lender who funds the PPP loans backed by the Federal Government; (b) a small business and "main street" borrower who obtains the PPP loan for the specified purpose (the "Borrower"); and (c) an independent agent who brings the Borrower to Lenders and helps shepherd the Borrower through the PPP loan process (the "Agent").    It is through the Agent that the PPP ensures the proper and efficient allocation of finite credit under the PPP and its "first come, first serve" approach.

20.    The SBA Regulations define Agent as an "authorized representative" which broadly includes:

    a.    An attorney;

    b.    An accountant;

    c.    A consultant;

    d.    Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

    e.    Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

---

[1] https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf

    f.  A loan broker; or

    g.  Any other individual or entity representing an applicant by conducting business with the SBA.[2]

21.    Without the valuable work performed by Plaintiff and the Class Members as Agents under the PPP, the CARES Act would not accomplish the United States Senate's expressed legislative intent.   The Senate requested Treasury to "issue guidance to lenders and agents to ensure that the … loans prioritize small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years."[3] [Emphasis added].

22.    The SBA Regulations also expressly provide how each of the PPP participants (Borrower, Lender and Agent) will benefit from (and be compensated under) the program.

23.    For the Lenders, the SBA Regulations provide that they will be compensated based on the balance of the financing at the time of final disbursement.   Specifically, the SBA will pay Lenders fees in the following amounts for processing PPP loans:

    a.  Five percent (5%) for loans of not more than $350,000;

    b.  Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and

    c.  One percent (1%) for loans of at least $2,000,000[4].

24.    For the Agents, the SBA Regulations provide that "Agent fees will be paid out of lender fees. The lender will pay the agent. Agents may not collect any fees from the applicant.

---

[2] https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf

[3] H.R. 748, CARES ACT, PL 116-136 (March 27, 2020; 134 Stat. 281)
[4] *Id.*

The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan" is as follows:

  a.  "One percent for loans of not more than $350,000;

  b.  0.50 percent for loans of more than $350,000 and less than $2 million; and

  c.  0.25 percent for loans of at least $2 million" ("Agent Fee(s)") (Emphasis Added).[5]

25.    The SBA Regulations also reflect that Treasury has determined that the Agent Fees set forth above are "reasonable" given the application requirements and the fees that Lenders receive for making PPP loans.

26.    Based on information and belief, Defendants received approval from the SBA and funded loans for numerous business owners represented by Plaintiff and the proposed Class, yet failed to pay the required compensation to Plaintiff, the Agent that facilitated the loan process between Lenders and the Borrower as contemplated by the SBA Regulations.

27.    Defendants have either failed and refused to pay, or are willing to pay only a partial percentage of the monies, owed in Agent Fees to Plaintiff and the proposed Class, thus retaining for themselves all of the statutory fees allotted by the Government for Agents as part of the PPP, despite the work performed by the Agents in working with Borrowers to secure the loans under the program, and directing them to the Defendants.

**B.    Plaintiff, in its Role as Agent, Assists its Clients With Applying for PPP Loans Under the CARES ACT**

28.    On or about March 27, 2020, Plaintiff became aware that the CARES Act had been signed into law.  Plaintiff, knowing that the COVID-19 crisis would seriously impact its clients' businesses, sought to obtain PPP loans through various Lenders on behalf of its clients.

---

[5]  *Id.*

29.     Plaintiff spent considerable time familiarizing itself with the Act, and the related SBA Regulations, and, in particular, (a) Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP, and (b) Section 1106 of the Act which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

30.     In or about April 2020, Plaintiff, in its role as Agent, assisted its clients as Borrowers under the PPP in the gathering and analysis of their documents, as well as the calculation and preparation of each loan application (the "Application(s)").

31.     Plaintiff assisted clients as Borrowers from multiple lending institutions, including each of the Defendants.

32.     Based on the SBA Regulations, Plaintiff understood that it was not allowed to charge its clients as Borrowers a fee relating to the application process, and that the only compensation it would receive was from the mandated Agent Fees paid out of the lending institution's fees received from the Federal Government for originating the Government-backed loan.

33.     To prepare the documentation, Plaintiff assisted clients in gathering the required information and preparing the Applications, including the following, where applicable or necessary:

    a.  Loan Calculator Spreadsheet;

    b.  SBA Form 2483;

    c.  Addendum A: Affiliates;

    d.  Information if the applicant received an SBA Economic Injury Disaster Loan ("EIDL");

    e.  Certificate of Beneficial Ownership Interest;

f.   Driver's Licenses;

g.   Articles of Incorporation or Articles of Organization;

h.   2019 IRS/State Payroll Forms;

i.   2019 Payroll Summary Report by each Employee;

j.   2019 Health Insurance Premium Paid, including each monthly statement or year-end summary;

k.   2019 Retirement Matching Plan Paid, including each monthly statement or year-end summary;

l.   2020 1st QTR 941 Form;

m.   January 2020 Payroll Summary by Employee;

n.   February 2020 Payroll Summary by Employee;

o.   March 2020 Payroll Summary by Employee;

p.   Health Insurance Premium Paid – January, February, and March 2020;

q.   Retirement Matching Plan Paid – January, February, and March 2020;

r.   Wiring Instruction; and

s.   Copy of the Borrower's most recent bank statement,

(collectively, (a) – (s) above are part of the Application).

34.    Plaintiff believed and expected in good faith that it would receive the Agent Fees from the Defendants upon funding of each of its clients' loans under the PPP as required by the SBA Regulations.

35.    Upon information and belief, Defendants did not comply with the SBA Regulations in distributing PPP funds and failed and refused to pay the Agent Fees.

36.     Specifically, Defendants as Lenders under the PPP, and without any legal authority under the SBA Regulations or otherwise, refused and continue to refuse to pay Agents the required statutory Agent Fees from the fees they obtained from the Government despite demand, or repudiated the Agent's role and refused to pay the required Agent Fees as a general policy.

37.     As a result of Defendants' unlawful actions, Plaintiff and the proposed Class has suffered financial harm by being deprived of the statutorily mandated compensation for the professional services that it provided in connection with assisting its clients in applying for and obtaining PPP loans, and by being denied by Defendants just compensation for playing the important role of Agent in the PPP process on behalf of the intended beneficiaries of the program, the small business owner.

## CLASS ACTION ALLEGATIONS

38.     As noted above, Plaintiff brings this action on behalf of itself and all others similarly situated as a state and nationwide Class, defined below.

39.     Plaintiff, in accordance with Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3) and (b)(4), seeks to represent a Class composed of and defined as follows:

a.   All Agents as that term is defined by the SBA Regulations that facilitated small businesses in receiving a loan under the PPP, i.e., met the criteria for eligibility and were not otherwise ineligible, between February 15, 2020 and June 30, 2020, who timely applied for a PPP loan through various Lenders and were processed and approved for funding.

b.   An "Agent" as defined by the SBA Regulations is as follows:

i.   an attorney,

      ii.  an accountant,

     iii.  a consultant,

     iv.  someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant,

     v.  someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans,

     vi.  a loan broker, or

    vii.  any other individual or entity representing an applicant by conducting business with the SBA.

40.    Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

41.    *Numerosity:* The Class is composed of thousands of Agents (the "Class Members") whose joinder in this action would be impracticable.  *See* Fed. R. Civ. P. 23(a)(1). The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

42.    *Commonality:* There is a commonality in questions of law and fact affecting the Class.  *See* Fed. R. Civ. P. 23(a)(2).  These questions of law and fact predominate over individual questions affecting individual Class Members, including, but not limited to, the following:

    a.  Did Defendants comply with all applicable SBA Regulations in processing Applications for PPP funds and in distributing PPP funds?

    b.  Did Defendants comply with their legal obligations under the terms of the CARES Act as a lender of the PPP funds?

    c.  Did Defendants have a policy and/or practice of failing to compensate Agents and pay them the required Agent Fees for their work in facilitating PPP loans to the detriment of the Class?

d. Did Defendants prioritize their own origination fees over abiding by the CARES Act and PPP specifications?

e. Did Defendants' conduct constitute intentional tortious interference with economic relations?

f. Did Defendants' conduct constitute conversion of the Agent Fees owed to the Plaintiff and the proposed Class?

g. Did Defendants possess exclusive knowledge of material facts, with respect to the Application process, i.e., that the Agents would not receive the required Agent Fees compensation when assisting applicants with PPP loan process?

h. Did Defendants actively conceal a material fact or facts from the Plaintiff, i.e., that the Agent was not going to receive its earned Agent Fees when assisting with the Applications?

i. Whether Defendants' conduct, as alleged herein, was intentional and knowing?

j. Did Defendants frustrate and tortiously interfere with Plaintiff and the Class Members reasonable expectations of receiving the Agent Fees when assisting the Borrowers for PPP loans that were funded;

k. Whether Class Members are entitled to damages and/or restitution; and if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Class Members as a result of the conduct alleged herein?

l. Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agent their earned fees under the CARES Act; and

m. Whether Plaintiff and Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of suit.

43. *Superiority*: In engaging in the conduct described herein, Defendants have acted and/or failed to act on grounds generally applicable to Plaintiff and other Class Members. Such

conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford to seek legal redress of the wrongs complained of herein on an individual basis. Absent a class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the fruits of their misdeeds. Any difficulties that might occur in the management of this proposed class action are insubstantial. *See* Fed. R. Civ. P. 23(b)(3)(D).

44. *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class Members. *See* Fed. R. Civ. P. 23(a)(2). Plaintiff and the Class Members have all been deceived by Defendants' unfair and unlawful PPP loan application and funding practices, as alleged herein. The factual and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of Defendants' actions are described herein. Defendants' purported defenses to the claims, both legal and factual, are typical of the defenses they would try to raise to the Class claims.

45. *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interest of the other Class Members that Plaintiff seeks to represent. *See* Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interest of the other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel have any interest adverse to other Class Members.

46. *Ascertainability*: Plaintiff is informed and believes that Defendants keep extensive computerized records of their loan Applications through, *inter alia*, computerized loan application systems and Federally mandated record keeping practices. Defendants have one or more databases through which all of the borrowers may be identified and ascertained, and it

maintains contact information, including email and mailing addresses. From this information, the existence of the Class Members (i.e., the Agent for the borrower) can be determined, and thereafter, notice of this action can be disseminated in accordance with due processes requirements.

47.    Neither Plaintiff nor the Class have previously litigated the claims asserted in this Complaint.

**COUNT I**
**(DECLARATORY RELIEF)**

48.    Plaintiff incorporates by reference the forgoing allegations as if the same were fully alleged herein.

49.    Plaintiff asserts this cause of action on behalf of itself and other Class Members as Agents defined by the SBA as follows: (i) an attorney; (ii) an accountant; (iii) a consultant; (iv) someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant; (v) someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans; (vi) a loan broker; or (vii) any other individual or entity representing an applicant by conducting business with the SBA.

50.    Plaintiff as an Agent under the PPP assisted its clients with submitting the Applications to obtain PPP loans under the CARES Act. Defendants failed to pay Agent Fees owed to Plaintiff as required by SBA Regulations and instead kept all of the origination and processing fees for themselves, in direct violation of the SBA Regulations.

51.    An actual controversy has arisen between Plaintiff and Defendants as to the Agent Fees owed to Plaintiff by Defendants, and, upon information and belief, Defendants either deny that any Agent Fees are owed to Plaintiff or claim that only a percentage of the Agent Fees are owed.

14

52.      Plaintiff and the Class Members have a legally protectable interest under the SBA Regulations in that they are entitled to their mandated Agent Fees in connection with the professional services rendered to their clients in preparing and submitting Applications for PPP funds.

53.      Defendants have failed and refused, and continue to fail and refuse, to pay the mandated Agent Fees to the Agents as required under the SBA Regulations.

54.      Plaintiff and the Class Members seek a declaration in accordance with SBA Regulations that Defendants are required under the SBA Regulations to pay the Agent Fees at the statutory amount on each loan funded involving the Agent.

## COUNT II
### (TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS)

55.      Plaintiff incorporates by reference the forgoing allegations as if the same were fully alleged herein.

56.      Plaintiff asserts this cause of action on behalf of itself and the other Class Members as Agents.

57.      Defendants have intentionally and tortiously interfered with Plaintiff's and the Class Members' economic relations by circumventing and ignoring their obligations to comply with the Agent Fee payment requirements under the SBA Regulations and improperly retaining monies owed to Agent.

58.      Upon information and belief, Defendants improperly allege that Plaintiff and the Class Members are not entitled to the Agent Fees, or are only entitled to a portion of the Agent Fees, despite the clear and unambiguous terms in the SBA Regulations.

59.    Defendants knowingly and intentionally engaged in lending to businesses under the PPP and thus were required to abide by the obligations unambiguously set forth in the SBA Regulations to pay Plaintiff the mandated Agent Fees.

60.    Plaintiff, as well as all Class Members, engaged in helping clients apply for PPP loans with the expectation, consistent with the SBA Regulations, that while they were not permitted to charge their clients fees in assisting in compiling the Applications or directing them to a certain Lender, they would obtain as compensation the mandated Agent Fees from the Lenders once a loan to a Borrower represented by an Agent was closed.

61.    Plaintiff and the Class Members also chose specific Defendants to place the Borrowers with the expectation of being paid the Agent Fees as a PPP Agent under the SBA Regulations.

62.    Defendants are well aware or should have been aware of the mandated Agent Fees under the SBA Regulations.  Notwithstanding, Defendants have improperly chosen to retain the Agent Fees owed to Plaintiff and the Class.

63.    Defendants' acts constitute intentional and tortious interference with Plaintiff's and the Class Members' economic relations because Defendants improperly and wrongfully withheld monies owed to Plaintiff that were clearly provided for pursuant to the SBA Regulations and that Plaintiff earned.

64.    Defendants' improper acts or practices of refusing to pay Plaintiff  and the proposed Class the mandated Agent Fees, and their failure to adhere to the SBA Regulations as to the PPP loans, are the proximate cause of the damages sustained by Plaintiff and the Class Members.

65.     Defendants have used improper means to obtain money from the Federal Government at the expense of Plaintiff and the Class by: (a) failing to adhere to the SBA Regulations, and/or (b) wrongfully informing the Agents such as Plaintiff and the Class Members that they would not receive any compensation for the work they performed, and/or (c) letting the Agent bring the Borrower to the Bank for a PPP loan, but then telling the Agent after the fact that they would not be paid, or paid less than the mandated Agent Fee.

66.     As a result, Defendants have engaged in intentional and tortious interference with Plaintiff's and the Class Members' economic relations.

67.     Defendants' conduct manifests a knowing and reckless indifference towards, and a disregard of, the rights of Plaintiff and the Class Members.

68.     Plaintiff, the Class, and members of the public will be harmed and/or denied an effective and complete remedy if the relief requested herein is not granted.

69.     Plaintiff and the Class Members request this Court to cause Defendants to disgorge the amount of the Agent Fees wrongfully misappropriated by Defendants to Plaintiff and all Class Members, enjoin Defendants from continuing the improper acts as discussed herein, and award Plaintiff and all Class Members compensatory damages, and such other damages and relief this Court deems just and proper.

## <u>COUNT III</u>
### (UNJUST ENRICHMENT)

70.     Plaintiff incorporates by reference the forgoing allegations as if the same were fully alleged herein.

71.     Plaintiff asserts this cause of action on behalf of itself and other Class Members as Agents.

72.     Defendants have been, and continue to be, unjustly enriched, to the detriment and at the expense of Plaintiff and the Class Members as a result of Defendants' wrongful withholding of Agent Fees owed to Plaintiff and the Class.

73.     Defendants have unjustly benefitted through the unlawful and wrongful retention of money due to the Agents as a result of the funding of the PPP loans.  Specifically, Defendants retained for their benefit Agent Fees that Plaintiff and the Class were entitled to be paid for work performed and continue to benefit to the detriment and at the expense of Plaintiff and the Class Members.

74.     Plaintiff, and the Class Members, chose specific Defendants to place the Borrowers and the PPP Loans, with the reasonable expectation of being paid as an Agent under the SBA Regulations.

75.     Defendants are intentionally retaining the monies allocated by the Federal Government for Agent Fees and paid to Defendants, despite knowing that said monies are owed to Plaintiff and the Class Members.

76.     Upon information and belief, Defendants refuse to pay, or are willing to pay only a partial percentage of the monies owed to Plaintiff and the Class Members, and are choosing to retain the Agent Fees for themselves in direct violation of SBA regulations.

77.     Defendants' conduct manifests a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiff and the Class Members.

78.     Accordingly, Defendants should not be allowed to retain the benefits conferred upon them by Plaintiff and the Class Members.

79.     Plaintiff and the Class Members request this Court to cause Defendants to disgorge the amount of the Agent Fees wrongfully misappropriated by Defendants to Plaintiff

and all Class Members, enjoin Defendants from continuing the improper acts as discussed herein, and award Plaintiff and all Class Members such other damages and relief that this Court deems just and proper.

**COUNT IV**
**(CONVERSION)**

80.    Plaintiff incorporates by reference the forgoing allegations as if the same were fully alleged herein.

81.    Plaintiff and the other Class Members have a right to the mandatory Agent Fees under the SBA Regulations.

82.    The Agent Fees were paid to the Banks by the Treasury as part of the origination fees paid for each Borrower's loan, and were placed in the Defendants' custody for a "definite application" -- i.e. to be used to pay Plaintiff and the other Class Members their Agent Fees.

83.    Defendants willfully interfered with the rights of Plaintiff and the other Class Members, without legal justification, when they misappropriated and retained the monies allocated by Treasury for the Agent Fees due upon the funding of each of Plaintiff's and the other Class Members' clients' loans.

84.    Defendants deprived Plaintiff and the other Class Members of the possession and use of the Agent Fees and misappropriated them for their own benefit.

85.    At the time they unlawfully retained the Agent Fees, Defendants knew or should have known that the Agent Fees were owed to Plaintiff and the other Class Members.

86.    Defendants' improper acts or practices of refusing to pay Plaintiff and the other Class Members the mandated Agent Fees are the proximate cause of the damages sustained by Plaintiff and the Class Members.

87.     Defendants' conduct manifests a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiff and the Class Members.

88.     Plaintiff and the Class Members request this Court to cause Defendants to disgorge the amount of the Agent Fees wrongfully misappropriated by Defendants to Plaintiff and all Class Members, enjoin Defendants from continuing the improper acts as discussed herein, and award Plaintiff and all Class Members compensatory damages, and such other damages and relief that this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class Members, prays for the following relief:

A.  An Order certifying the Class as defined above, appointing Plaintiff as Class representative for the Class, and appointing Plaintiff's counsel as Class counsel for the Class;

B.  An Order declaring Defendants' actions to be unlawful;

C.  An Order declaring that Defendants have been unjustly enriched;

D.  An award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and the Class Members, as well as equitable relief including disgorgement and enjoining Defendants from continuing the improper acts as discussed herein, and all other available relief under applicable law;

E.  An award of exemplary damages pursuant to applicable law, including, but not limited to, Texas Civil Practice and Remedies Code § 41.003, for fraudulent and malicious conversion and tortious interference with economic relations;

F.   Reasonable attorneys' fees and expenses as permitted by applicable statutes and

law;

G.   Costs related to bringing this action;

H.   Pre and post-judgment interest as allowed by law; and

I.   Such further relief at law or in equity that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable under Federal Rule of

Civil Procedure 38(a).

Dated: May 29, 2020

Respectfully submitted,

/s/ Cory S. Fein
CORY S. FEIN
CORY FEIN LAW FIRM
712 Main Street, Suite 800
Houston, TX 77002
(281) 254-7717
(530) 748 - 0601 (fax)
cory@coryfeinlaw.com

*For Plaintiff, Juan Antonio Sanchez, PC*