United States District Court
Southern District of Texas
**ENTERED**
October 14, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JUAN ANTONIO SANCHEZ, PC, on behalf of itself and a similarly situated class, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 7:20-cv-00139 |
| BANK OF SOUTH TEXAS; JPMORGAN CHASE BANK; and FROST BANK, | § § § § | |
| Defendants. | § § | |

## OPINION AND ORDER

The Court now considers "Defendants' Joint Motion to Dismiss for Failure to State a Claim and Lack of Subject-Matter Jurisdiction,"[1] Plaintiff's response,[2] and Defendants' reply.[3] The Court also considers "Plaintiff's Motion for Judicial Notice."[4] After considering the motions, record, and relevant authorities, the Court **GRANTS** both motions.

### I. BACKGROUND AND PROCEDURAL HISTORY

This is an action brought under the Paycheck Protection Program (PPP) recently established by Congress in the Coronavirus Aid, Relief, and Economic Security Act (CARES Act),[5] in addition to the Class Action Fairness Act.[6] Plaintiff seeks to represent a class in order to recover agent fees Plaintiff alleges are owed to it and other similarly situated class members

---

[1] Dkt. No. 18.
[2] Dkt. No. 28.
[3] Dkt. No. 30.
[4] Dkt. No. 29.
[5] Pub. L. No. 116-136, § 1102, 134 Stat. 281, 286–294 (Mar. 27, 2020), 15 U.S.C. § 636.
[6] 28 U.S.C. § 1332(d).

pursuant to the PPP and its implementing regulations, which create a federal loan program designed to financially assist small businesses during the COVID-19 pandemic.[7]

Mr. Juan Antonio Sanchez is an individual and licensed Certified Public Accountant who owns Plaintiff Juan Antonio Sanchez, PC, a professional corporation in the State of Texas.[8] Plaintiff corporation "assists taxpayers and small business with taxes in McAllen, Texas and surrounding communities."[9] Plaintiff alleges it "assisted its clients with preparing their application(s) for a PPP loan" from the Defendant banks,[10] who act as PPP-approved lenders.[11] As the agent for Plaintiff's clients who applied for PPP loans, Plaintiff submitted one application to Defendant Bank of South Texas for $95,600; one application to Defendant JPMorgan Chase Bank, NA for $459,600; and three applications to Defendant Frost Bank totaling $74,000.[12] Plaintiff alleges that it is entitled to "regulatorily required Agent Fees" that the Defendants have wrongfully kept for themselves[13] because Plaintiff allegedly complied with all applicable PPP regulations and is entitled to agent fees[14] that are meant to incentivize agents to assist PPP loan applicants.[15]

Plaintiff's first and chief cause of action is its request for a "a declaration, in accordance with SBA Regulations and pursuant to the [federal] Declaratory Judgment Act that Defendants

---

[7] Dkt. No. 16 (Plaintiff's "First Amended Class Action Complaint for Declaratory Relief and Damages"). This is Plaintiff's live complaint. Dkt. No. 25 at 2 n.11. Congress has extended and modified the PPP. Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139, 134 Stat. 620 (Apr. 24, 2020); Paycheck Protection Program Flexibility Act of 2020, Pub. L. No. 116-142, 134 Stat. 641 (June 5, 2020). According to Plaintiff, in March 2020, the CARES Act provided for "$377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury [sic] and the Small Business Administration, a United States government agency that provides support to entrepreneurs and small businesses," including $349 billion to fund the PPP in accordance with the Small Business Administration's "7(a) Loan Program" under 15 U.S.C. § 636(a). Dkt. No. 16 at 4, ¶¶ 15–16.
[8] Dkt. No. 16 at 1, ¶ 1.
[9] *Id.* at 1–2, ¶ 1.
[10] *Id.* at 2, ¶ 1.
[11] *Id.* at 7, ¶ 31.
[12] *Id.* at 9, ¶ 38.
[13] *Id.* at 7–8, ¶¶ 32–33.
[14] *Id.* at 9, ¶¶ 37–40.
[15] *Id.* at 7, ¶ 27.

are obligated to set aside money to pay, and to pay the Agent Fees the PPP Agents have earned for the work performed on behalf of their clients that received a PPP loan from the Defendants."[16] Plaintiff also brings claims for violation of state law, specifically unjust enrichment, conversion, and breach of implied contract,[17] and class action allegations under Federal Rule of Civil Procedure 23[18] for an allegedly owed amount over $5 million on behalf of a putative class.[19] On July 22, 2020, prior to Plaintiff completing service on Defendants Chase Bank and Frost Bank, Defendant Bank of South Texas filed a motion to dismiss Plaintiff's original complaint.[20] Within 21 days, Plaintiff timely[21] filed its first amended complaint, the live pleading.[22] Accordingly, the Bank of South Texas's independent motion to dismiss[23] is **DENIED AS MOOT**. Within two weeks of Plaintiff's first amended complaint, Defendants filed the instant joint motion to dismiss Plaintiff's amended complaint.[24] Pending the Court's decision on the motion to dismiss, the Court stayed discovery until November 3, 2020.[25] Plaintiff responded to the motion to dismiss,[26] and Defendants replied,[27] and the motion is ripe for consideration.

The Court briefly pauses to note that this kind of litigation is springing up nationwide, consisting now of over fifty lawsuits alleging a failure to pay agent fees under the PPP.[28] The United States Judicial Panel on Multidistrict Litigation has declined to consolidate the cases.[29] On August 17, 2020, the first decision in this area was issued by the Northern District of Florida,

---

[16] Dkt. No. 16 at 13–14, ¶ 64 (citation omitted).

[17] *Id.* at 14–19, ¶¶ 66–100.

[18] *Id.* at 10–13, ¶¶ 49–60.

[19] *Id.* at 2, ¶ 5.

[20] Dkt. No. 14. Defendant Bank of South Texas also attempted to pay Plaintiff. Dkt. No. 28 at 3 n.5.

[21] *See* FED. R. CIV. P. 15(a)(1)(B).

[22] Dkt. No. 16.

[23] Dkt. No. 14.

[24] Dkt. No. 18.

[25] Dkt. No. 25.

[26] Dkt. No. 28.

[27] Dkt. No. 30.

[28] *In re Paycheck Prot. Program Agent Fees Litig.*, No. MDL 2950, 2020 WL 4673430, at *1 (J.P.M.L. Aug. 5, 2020).

[29] *Id.* at *3.

holding that agents who assist applicants with a PPP are not entitled to agent fees in the absence of an agreement with the lenders.[30] On September 21, 2020, the Southern District of New York substantially agreed.[31] This Court believes it is the third to address this issue, and substantively joins the emerging consensus described by the Northern District of Florida and Southern District of New York for the reasons elaborated below.

## II.  MOTION FOR JUDICIAL NOTICE

Before the Court assesses Defendants' motion to dismiss, the Court acknowledges "Plaintiff's Motion for Judicial Notice" which requests the Court take judicial notice of various documents available on the United States Small Business Administration's and United States Treasury's respective websites pursuant to Federal Rule of Evidence 201(b).[32] The Court first notes that Plaintiff's motion lacks the required averments for opposed motions[33] or a caption that the motion is unopposed.[34] Nevertheless, the Court now considers the motion.

It is well-established that a Court may consider matters of public record in assessing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.[35] Plaintiff's motion is superfluous. The Court will consider matters of public record as necessary in determining Defendants' motion to dismiss. Accordingly, Plaintiff's motion for judicial notice[36] is **GRANTED**, but the Court admonishes Plaintiff that such a motion is inutile.

## III. MOTION TO DISMISS

---

[30] Pierce Atwood LLP, *COVID-19: Florida Federal Court First to Dismiss PPP Agent Fee Class Action*, JD SUPRA (Aug. 28, 2020), https://www.jdsupra.com/legalnews/covid-19-florida-federal-court-first-to-12299/ (citing *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, No. 3:20CV5425-TKW-HTC, 2020 WL 4882416 (N.D. Fla. Aug. 17, 2020)).

[31] *Johnson v. JPMorgan Chase Bank, N.A.*, No. 20-CV-4100 (JSR), 2020 WL 5608683 (S.D.N.Y. Sept. 21, 2020) (Rakoff, J.); *cf. Steven L. Steward & Assocs., P.A., v. Truist Bank*, No. 620CV1083ORL40GJK, 2020 WL 5939150 (M.D. Fla. Oct. 6, 2020).

[32] Dkt. No. 29.

[33] *See* LR7.1.D.

[34] *See* LR7.2.

[35] *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

[36] Dkt. No. 29.

### a. Preliminary Issue

As a threshold matter, the Court notes Plaintiff's response brief lacks numbered paragraphs entirely, hindering the Court's reference to Plaintiff's arguments. The Court cautions Plaintiff that all briefs should consistently number each paragraph to properly comply with the Federal Rules of Civil Procedure.[37]

### b. Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1331 because this action concerns the federal Declaratory Judgment Act and federal CARES Act and the latter's federal regulations.[38]

### c. Legal Standard

The Court uses federal pleading standards to determine the sufficiency of a complaint.[39] "A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts."[40] Under Federal Rule of Civil Procedure 12(b)(6), to avoid dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[41] The Court reads the complaint as a whole[42] and accepts all well-pleaded facts as true (even if doubtful or suspect[43]) and views those facts in the light most favorable to the plaintiff (because a

---

[37] FED. R. CIV. P. 7(b)(2) ("The rules governing captions and other matters of form in pleadings apply to motions and other papers."); FED. R. CIV. P. 10(b) (emphasis added) ("A party must state its claims or defenses *in numbered paragraphs*, each limited as far as practicable to a single set of circumstances.").

[38] Dkt. No. 16 at 2, ¶ 6.

[39] *See Genella v. Renaissance Media*, 115 F. App'x 650, 652–53 (5th Cir. 2004).

[40] *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995) (quotation omitted).

[41] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[42] *See Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011) ("While the allegations in this complaint that the Golf Association's anticompetitive acts 'substantially affected interstate commerce' are not sufficient on their own, the complaint here read as a whole goes beyond the allegations rejected in *Twombly* and *Iqbal*.").

[43] *Twombly*, 550 U.S. at 555–56.

Rule 12(b)(6) motion is viewed with disfavor[44]), but will not strain to find inferences favorable to the plaintiff,[45] but also will not indulge competing reasonable inferences that favor the Defendant.[46] A plaintiff need not plead evidence[47] or even detailed factual allegations, especially when certain information is peculiarly within the defendant's possession,[48] but must plead more than "'naked assertion[s] devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to survive a motion to dismiss.[49]

In evaluating a motion to dismiss, Courts first disregard any conclusory allegations or legal conclusions[50] as not entitled to the assumption of truth,[51] and then undertake the "context-specific" task, drawing on judicial experience and common sense, of determining whether the remaining well-pled allegations give rise to entitlement to relief.[52] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[53] Courts have "jettisoned the [earlier] minimum notice pleading requirement"[54] and the complaint must plead facts that

---

[44] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) ("This court construes facts in the light most favorable to the nonmoving party, 'as a motion to dismiss under 12(b)(6) "is viewed with disfavor and is rarely granted."'")).

[45] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[46] *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009).

[47] *Copeland v. State Farm Ins. Co.*, 657 F. App'x 237, 240–41 (5th Cir. 2016).

[48] *See Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (holding that pleading "on information and belief" is acceptable when the inference of culpability is plausible).

[49] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also id.* at 679 (holding that a complaint that "do[es] not permit the court to infer more than the mere possibility of misconduct" does not suffice to state a claim).

[50] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quotation omitted) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

[51] *Mustapha v. HSBC Bank USA, NA*, No. 4:11-CV-0428, 2011 WL 5509464, at *2 (S.D. Tex. Nov. 10, 2011) (Hanks, J.) ("[A] court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

[52] *Iqbal*, 556 U.S. at 678–79; *see also Fernandez-Montez v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

[53] *Iqbal*, 556 U.S. at 678.

[54] *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009).

"nudge" the claims "across the line from conceivable to plausible,"[55] because discovery is not a license to fish for a colorable claim.[56] The complaint must plead every material point necessary to sustain recovery; dismissal is proper if the complaint lacks a requisite allegation.[57] However, the standard is only "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[58]

The Court is limited to assessing only the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the Court may take judicial notice.[59] Attachments to the complaint become part of the pleadings for all purposes,[60] but the Court is not required to accept any characterization of them because the exhibit controls over contradictory assertions,[61] except in the case of affidavits.[62] Because the focus is on the pleadings, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56,"[63] but not if the material is a matter of public record[64] and not if a

---

[55] *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

[56] *Barnes v. Tumlinson*, 597 F. App'x 798, 799 (5th Cir. 2015); *see Iqbal*, 556 U.S. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

[57] *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006); *accord Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

[58] *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))

[59] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[60] *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing FED. R. CIV. P. 10(c)).

[61] *Kamps v. Baylor Univ.*, 592 F. App'x 282, 284 n.1 (5th Cir. 2014)

[62] *Bosarge v. Miss. Bureau of Narc.*, 796 F.3d 435, 440–41 (5th Cir. 2015) ("[W]hile the affidavits may be considered as an aid to evaluating the pleadings, they should not control to the extent that they conflict with [plaintiff's] allegations.").

[63] FED. R. CIV. P. 12(d).

[64] *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 n.2 (5th Cir. 2012) (per curiam) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)); *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

defendant attaches documents to a motion to dismiss that are "referred to in the plaintiff's complaint and are central to her claim."[65]

### d.  Analysis

#### 1.  *Whether There is any Private Right of Action Under the CARES Act*

The threshold question is whether Plaintiff has any standing to bring a cause of action under the Declaratory Judgment Act. It is well-settled that "the operation of the Declaratory Judgment Act is procedural only"[66] and the "the availability of [declaratory] relief presupposes the existence of a judicially remediable right,"[67] so the Declaratory Judgment Act does not create any private right of action and is merely a mode for a plaintiff to obtain declaratory relief in federal court regarding an existing cause of action.[68]

Plaintiff does not contend the CARES Act expressly creates any cause of action. Instead, Plaintiff urges the Court to infer an implicit private right of action.[69] The Supreme Court has instructed federal courts to be chary in implying or inferring a private right of action from a federal statute that does not expressly create one.[70] To imply or create a private right of action, Congress "must do so in clear and unambiguous terms."[71] Courts "begin with the standard presumption that Congress did not intend to create a private right of action. The plaintiff generally bears the relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the relevant statute."[72]

---

[65] *Causey v. Sewell Cadillac–Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004), *cited in In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).
[66] *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937).
[67] *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).
[68] *Dallas Cnty. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 947 (N.D. Tex. 2014), *aff'd sub nom. Harris Cnty. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015).
[69] Dkt. No. 28 at 21–23.
[70] *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 (2001).
[71] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002).
[72] *Lundeen v. Mineta*, 291 F.3d 300, 311 (5th Cir. 2002) (quotations and footnote omitted).

Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.[73]

To determine whether [courts] should infer a cause of action when one is not explicitly authorized by Congress, [courts] must answer the four questions posed by the Supreme Court . . . (1) whether the plaintiff is one of a class for whose especial benefit the statute was enacted; (2) whether there is an indication of legislative intent to create or deny such remedy; (3) whether such a remedy would be inconsistent with the underlying legislative purpose; and (4) whether the cause of action is one traditionally relegated to state law.[74]

The Supreme Court "has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons," but "has been especially reluctant to imply causes of actions under statutes that create duties on the part of persons for the benefit of the public at large."[75] "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of person.'"[76] The Fifth Circuit characterizes this distinction as a difference between rights-creating and duties-creating language: "[t]he issue is whether the statute expressly identifies [a] class Congress intended to benefit or whether Congress has instead framed the statute simply as a general prohibition or a command."[77] In short, "[t]he question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries."[78]

---

[73] *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) (citations omitted).
[74] *Wright v. Allstate Ins. Co.*, 500 F.3d 390, 395 (5th Cir. 2007) (quotation omitted).
[75] *Cannon v. Univ. of Chi.*, 441 U.S. 677, 690 n.13 (1979).
[76] *Alexander*, 532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).
[77] *Lundeen*, 291 F.3d at 311 (second alteration in original) (quotations and footnote omitted).
[78] *California v. Sierra Club*, 451 U.S. 287, 294 (1981).

Plaintiff argues that "[t]he language of the CARES Act unmistakably focuses on a benefitted class—'An agent that assists an eligible recipient.'"[79] This statutory language must be contextualized. The CARES Act modified the Small Business Act in part as follows:

(P) REIMBURSEMENT FOR PROCESSING.—
    (i) IN GENERAL.—The Administrator shall reimburse a lender authorized to make a covered loan at a rate, based on the balance of the financing outstanding at the time of disbursement of the covered loan, of—
        (I) 5 percent for loans of not more than $350,000;
        (II) 3 percent for loans of more than $350,000 and less than $2,000,000; and
        (III) 1 percent for loans of not less than $2,000,000.
    (ii) FEE LIMITS.—**An agent that assists an eligible recipient** to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator.
    (iii) TIMING.—A reimbursement described in clause (i) shall be made not later than 5 days after the disbursement of the covered loan.
    (iv) SENSE OF THE SENATE.—It is the sense of the Senate that the Administrator should issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals (as defined in section 8(d)(3)(C)), women, and businesses in operation for less than 2 years.[80]

Pointing to this single clause of a sentence, buried four layers deep in a verbose statute, and appearing only once as the language does not recur, Plaintiff argues that "[t]he PPP statute and SBA Regulations clearly spell out the rights and beneficiaries and thus creates an implied right of action."[81] As support, Plaintiff points to a nonbinding case that "neither impl[ied] nor suggest[ed] that [a statute] creates a private right of action for monetary damages."[82] Plaintiff points to no legislative history intimating concern for agent fees and no legislative purpose that would be served by recognizing an implied private right of action.[83] Indeed, even within the subsection Plaintiff points to, a legislative purpose is specifically identified in subparagraph (iv)

---

[79] Dkt. No. 28 at 22 (citing 15 U.S.C. § 636(a)(36)(P)(ii)).
[80] Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 1102, 134 Stat. 281, 293 (Mar. 27, 2020), 15 U.S.C. § 636(a)(1)(P)(ii) (emphasis added).
[81] Dkt. No. 28 at 22–23.
[82] *First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1128 (9th Cir. 2000), *cited in* Dkt. No. 28 at 22.
[83] *See* Dkt. No. 28 at 22–23.

that prioritizes "small business concerns"—lenders and agents are just the means to that end. Importantly, the "text of the CARES Act does not create any *entitlement* to agent fees; it only *limits* what may be paid to agents,"[84] so Plaintiff's claim of an entitlement and recognition of a private right of action to enforce that entitlement is simply unmoored from the text.

Instead, Plaintiff argues that it "has no other avenue of recompense" if agent fees are declared "discretionary" because that holding would, Plaintiff argues, "rende[r] all of the language devoted to defining the fees' parameters superfluous – an impermissible reading of the relevant texts."[85] But the conclusion that Plaintiff lacks a private right of action does not render agent fees discretionary. The Small Business Administration Administrator has supervisory and enforcement authority to enforce the provisions of the Small Business Act and its CARES Act amendments.[86] Indeed, it is precisely this administrative enforcement authority that "tend[s] to contradict a congressional intent to create privately enforceable rights . . . . The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."[87] The Court joins the preexisting consensus that "there is no private cause of action to enforce this [agent fee] provision of the CARES Act."[88] This holding is also consistent with the consensus of the Courts of Appeals that "the Small Business Act does not create a private right of action in individuals."[89]

---

[84] Dkt. No. 30 at 6, ¶ 2 (citing *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, No. 3:20CV5425-TKW-HTC, 2020 WL 4882416, at *1 (N.D. Fla. Aug. 17, 2020) (holding that agents are not entitled to agent fees) & *Johnson v. JPMorgan Chase Bank, N.A.*, No. 20-CV-4100 (JSR), 2020 WL 5608683, at *7 (S.D.N.Y. Sept. 21, 2020) ("The Court finds that that language does not create an independent entitlement for agent fees; rather, it simply imposes a limit on the amount of fees an agent is permitted to collect . . . .")).

[85] Dkt. No. 28 at 23.

[86] 15 U.S.C. § 650.

[87] *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001).

[88] *Johnson*, 2020 WL 5608683, at *8; *accord Profiles, Inc. v. Bank of Am. Corp.*, No. CV SAG-20-0894, 2020 WL 1849710, at *7 (D. Md. Apr. 13, 2020); *Sport & Wheat*, 2020 WL 4882416, at *3 (doubting that a private right of action exists).

[89] *Crandal v. Ball, Ball & Brosamer, Inc.*, 99 F.3d 907, 909 (9th Cir. 1996) (citing *Royal Servs., Inc. v. Maint., Inc.*, 361 F.2d 86, 92 (5th Cir. 1966) & *Searcy v. Hous. Lighting & Power Co.*, 907 F.2d 562 (5th Cir. 1990)); *United States v. Fid. Capital Corp.*, 920 F.2d 827, 838 n.39 (11th Cir. 1991).

### 2. *Whether Plaintiff is Entitled to Receive Fees*

Assuming arguendo that Plaintiff can sue for a violation of the CARES Act, and because the analysis illuminates whether Plaintiff can assert state law claims,[90] the Court proceeds to analyze whether Plaintiff's complaint states a claim for nonpayment of agent fees pursuant to the CARES Act. Plaintiff alleges that it acted as the agent for its PPP loan applicant clients and that the Defendant bank lenders approved and funded the PPP loans, but that Defendants then withheld the agent fees required to be paid by the CARES Act and its implementing regulations.[91] In their motion to dismiss, Defendants point to statutes and regulations governing the PPP to argue that Plaintiff has failed to comply with the procedural requirements and complete the necessary paperwork to be entitled to agent fees.[92] In response, Plaintiff argues that the PPP statutes and regulations direct Defendants to pay agent fees and leave no room for discretion, and that PPP requirements supersede preexisting and conflicting rules.[93]

The applicable statute as modified by the CARES Act provides, in a subsection entitled "Paycheck Protection loans:" "Except as otherwise provided in this paragraph, the [Small Business Administration] Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection."[94] Another relevant subsection provides that "[a]n agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator."[95] Finally, one part of the Small Business Act not modified by the CARES Act requires loan applicants to

---

[90] *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012) ("The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law."). *But see Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) ("Since in this case . . . no private right of action exists under the relevant statute, the plaintiffs efforts to bring their claims as state common-law claims are clearly an impermissible 'end run' around" federal law).

[91] Dkt. No. 16 at 9–10, ¶¶ 37–48.

[92] Dkt. No. 18 at 17–18, ¶¶ 25–29 (citing 15 U.S.C. §§ 636, 642 & 13 C.F.R. § 103.5(a)–(b)).

[93] Dkt. No. 28 at 12–18.

[94] 15 U.S.C. § 636(a)(36)(B).

[95] *Id.* § 636(a)(36)(P)(ii).

"certify to the Administration the names of any attorneys, agents, or other persons engaged by or on behalf of such business enterprise for the purpose of expediting applications made to the Administration for assistance of any sort, and the fees paid or to be paid to any such persons."[96] The parties do not point to any other statute that governs agent fees or directs how they are to be paid, so the Court turns to the Small Business Administration's implementing regulations. Defendants emphasize 13 C.F.R. § 103.5(a), which provides in full:

> Any Applicant, Agent, or Packager must execute and provide to SBA a **compensation agreement**, and any Lender Service Provider must execute and provide to SBA a Lender Service Provider agreement. Each agreement governs the compensation charged for services rendered or to be rendered to the Applicant or lender in any matter involving SBA assistance. SBA provides the form of compensation agreement and a suggested form of Lender Service Provider agreement to be used by Agents.[97]

Defendants argue the execution and delivery of the "compensation agreement" is a condition precedent to Defendants' liability for agent fees.[98] The Small Business Administration "provides the form of compensation agreement" in Form 159 and has done so since 1996.[99] Form 159 is designed to "to identify Agents and the fees and/or compensation paid to Agents" when an applicant applies for an SBA loan.[100]

To implement the PPP, the SBA issued its interim final rule on April 15, 2020, governing agent fees, which provides:

> Agent fees will be paid by the lender out of the fees the lender receives from SBA. Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed [a tiered rate structure].[101]

---

[96] 15 U.S.C. § 642(1).
[97] 13 C.F.R. § 103.5(a) (emphasis added).
[98] Dkt. No. 18 at 17, ¶ 26.
[99] Standards for Conducting Business With SBA, 61 Fed. Reg. 2679-01, 2,682 (Jan. 29, 1996) (codified at 13 C.F.R. § 103.5(a)).
[100] SMALL BUSINESS ADMINISTRATION, Form 159 (expires Aug. 31, 2021), https://www.sba.gov/document/sba-form-159-fee-disclosure-compensation-agreement.
[101] Paycheck Protection Program, 85 Fed. Reg. at 20,816.

Plaintiff points out that "[t]he program requirements of the PPP identified in this rule temporarily supersede any conflicting Loan Program Requirement."[102] A "Loan Program Requirement" is any requirement imposed (such as by statute, regulation, standard operating procedure, or SBA form) on a financial institution lender, Certified Development Company that provides certain financing to small businesses, or microloan program participant that lends up to $50,000 to small businesses.[103] Plaintiff argues that the "PPP loan program does not (and could not) require the use of Form 159—it is a plainly conflicting 'Loan Program Requirement.'"[104]

The Court disagrees. First, nothing about the SBA requiring *agents* to complete a compensation agreement via Form 159 conflicts with requirements imposed upon *lenders* or Certified Development Companies; in other words, the requirement of 13 C.F.R. § 103.5(a) that agents execute a compensation agreement cannot be a "Loan Program Requirement" that conflicts with the PPP because Loan Program Requirements are imposed on lenders, not agents.

Plaintiff further argues that the "[t]he PPP supersedes SBA Form 159 for at least six reasons," but this argument is beside the point. The question is whether the PPP supersedes 13 C.F.R. § 103.5(a), not the form compensation agreement promulgated under that regulation. Even if the SBA's interim final rule disposed of *any* preexisting regulation that conflicts with the PPP and not merely conflicting Loan Program Requirements, the question would not be whether Form 159 conflicts with the PPP; the question is whether the PPP conflicts with the regulation that agents complete a compensation agreement to be entitled to agent fees. Plaintiff's argument that the PPP differs from traditional SBA loans in numerous ways is also beside the point,[105]

---

[102] Dkt. No. 28 at 14 (quoting Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811-01, 20,812 (Apr. 15, 2020)).
[103] 13 C.F.R. § 120.10.
[104] Dkt. No. 28 at 14 (citing Dkt. No. 28-1 at 4, R16).
[105] *See* Dkt. No. 28 at 8–9 (discussing differences).

because the only matter of significance is whether there is a specific and direct conflict between the PPP and SBA laws and regulations governing agent fees. Even if the Form 159 compensation agreement the SBA provides is not updated for the latest changes in law, nothing in 13 C.F.R. § 103.5(a) excuses noncompliance with the regulation because of the Small Business Administration's inefficiency in updating the form.[106] Plaintiff's argument and appendix are addressed to differences between Form 159, and the SBA's traditional pre-PPP loan program, and the PPP,[107] but Plaintiff does not show and fails to explain why anything in the PPP (or CARES Act) conflicts with the § 103.5(a) requirement that agents must execute the SBA's form compensation agreement. Accordingly, Plaintiff's argument that "the SBA Regulations identify all forms required and never includes or even mentions Form 159," is plainly wrong; SBA regulations require agents to "execute and provide to SBA a compensation agreement" that the SBA has promulgated as Form 159.[108] Plaintiff's argument that the SBA forms conflict with the PPP even extends to the awkward proposition that the SBA forms "evinc[e] unequivocal intent to supersede the provision of 15 U.S.C. § 642."[109] Section 642 requires SBA loan applicants to certify the names of agents used during the application process and the section was not modified by the CARES Act.[110] Plaintiff cites no authority for the novel argument that a federal agency's forms could supersede a federal statute and the Court declines to recognize this argument. Plaintiff's argument further conflicts with the traditional interpretive canon that Congress is

---

[106] *See Johnson v. JPMorgan Chase Bank, N.A.*, No. 20-CV-4100 (JSR), 2020 WL 5608683, at *7 n.16 (S.D.N.Y. Sept. 21, 2020) (rejecting the plaintiff's argument that Form 159 conflicts with the PPP because, "[f]irst, as the just-quoted language [of Form 159] makes clear, the form must also be completed when an agent is paid by the lender - precisely what the PPP contemplates. Second, even if plaintiffs were correct that this particular form is inapplicable to the PPP, that would not itself dispose of the requirement that agents and lenders enter into an agreement in order for agents to receive fees.").

[107] *See* Dkt. No. 28 at 14–18; Dkt. No. 28-1.

[108] Standards for Conducting Business With SBA, 61 Fed. Reg. 2679-01, 2,682 (Jan. 29, 1996) (codified at 13 C.F.R. § 103.5(a)).

[109] Dkt. No. 28 at 16–17; *see id.* at 18 (arguing "PPP applicants are exempted from every one of these requirements" under 15 U.S.C. § 642, but citing no authority and not explaining which traditional requirements the PPP exempts except for one unrelated requirement specifically exempted under 15 U.S.C. § 636(a)(36)(I)).

[110] 15 U.S.C. § 642(1).

presumed to be aware of existing law and federal regulations when it legislates—indeed, Congress specifically did away with certain SBA rules but not others in the CARES Act[111]—and "any reasonable understanding of the statute's effect requires awareness of the preexisting legal regime."[112] Therefore, Congress's failure to explicitly abrogate either 13 C.F.R. § 103.5(a) or 15 U.S.C. § 642 supports an inference that Congress did not intend to repeal or modify these provisions.[113]

Even Plaintiff's argument that Form 159 plainly conflicts with the PPP is questionable, because Form 159 explains that the form "must be completed and signed by the SBA Lender and the Applicant whenever an Agent is paid by either the Applicant or the SBA Lender in connection with the SBA loan application."[114] Assuming Plaintiff is correct that Form 159 is out of step with the PPP and in need of updating, Form 159 nevertheless unambiguously provides that it must be completed when an agent is to be paid. Lastly, Plaintiff's plaintive argument that agents will be disentitled to their hard-earned fees and banks will veto any applicant's choice of agent carries no water.[115] To be entitled to agent fees, agents must simply comply with 13 C.F.R. § 103.5(a) in executing and delivering a compensation agreement, in addition to all other applicable requirements.[116]

---

[111] Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 1102(e), 134 Stat. 281, 294 (Mar. 27, 2020).

[112] *June Med. Servs. LLC v. Kliebert*, 158 F. Supp. 3d 473, 533 (M.D. La. 2016) (collecting cases); *cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

[113] *See Tradeways, Ltd. v. U.S. Dep't of the Treasury*, Civ.A.No. ELH-20-1324, 2020 U.S. Dist. LEXIS 110737, at *35–36 (D. Md. June 24, 2020) (collecting cases).

[114] SMALL BUSINESS ADMINISTRATION, Form 159 at 1 (expires Aug. 31, 2021), https://www.sba.gov/sites/default/files/2020-08/Form%20159%20-%20%28FINAL%29%209.10.18-508.pdf; *see supra* note 106.

[115] *See* Dkt. No. 28 at 3, 5, 8, 18.

[116] *Johnson v. JPMorgan Chase Bank, N.A.*, No. 20-CV-4100 (JSR), 2020 WL 5608683, at *8 (S.D.N.Y. Sept. 21, 2020) (Rakoff, J.) ("[P]laintiffs are overlooking a third option: comply with the standard process and reach an agreement with the lender.").

The Court agrees with Defendants that "eliminating this requirement of advance agreement among lenders, agents, and applicants" would enable agents to "receive a fee simply by claiming they provided services (even if they did not)."[117] Plaintiff alleges that it assisted PPP applicants but not how it informed the banks that it acted as agent for the applicants.[118] In fact, Plaintiff argues that it could not inform Defendant banks of its involvement as the applicants' agent *without* Form 159.[119] Evidently, Plaintiff believed that it could serve as applicants' agent, kick its feet up and wait for the banks to issue PPP loans to successful applicants, and only *then* notify Defendant banks of its agency role and demand payment. The Court holds that that approach "is not how the PPP works, and it contradicts a common-sense interpretation of the relevant statutes and regulations."[120] This Court agrees that "[n]othing in [the Small Business Administration] regulations . . . is inconsistent with the [15 U.S.C. § 636(a)] requirement that an agent must first execute an agreement before receiving any agent fees."[121] In the absence of any allegation that Plaintiff executed the required compensation agreement,[122] and in the absence of any private right of action under the CARES Act, the Court agrees with Defendants that Plaintiff fails to state a claim upon which relief can be granted for an alleged violation of the CARES Act or PPP.

---

[117] Dkt. No. 18 at 19, ¶ 32.

[118] *See* Dkt. No. 16 at 9–10, ¶¶ 37–48.

[119] *See* Dkt. No. 28 at 16–17; *cf.* Dkt. No. 18 at 21, ¶ 37 ("Had the SBA intended for every putative agent to receive an agent fee even in the absence of a compensation agreement, it would have required loan applicants to identify those agents. But Form 2483 does not ask borrowers to identify agents that assisted them; that information must instead be provided on the traditional Form 159 Compensation Agreement. That absence further speaks to the SBA's understanding that agents seeking compensation must enter into a traditional Section 7(a) Compensation Agreement with the lender.").

[120] Dkt. No. 28 at 5.

[121] *Johnson v. JPMorgan Chase Bank, N.A.*, No. 20-CV-4100 (JSR), 2020 WL 5608683, at *7 (S.D.N.Y. Sept. 21, 2020); *accord Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, No. 3:20CV5425-TKW-HTC, 2020 WL 4882416, at *4 (N.D. Fla. Aug. 17, 2020) ("Form 159 does not conflict with the [SBA interim final rule] because (1) there is nothing in the IFR that prohibits the SBA Administrator from requiring use of the form.").

[122] *See* Dkt. No. 16.

Accordingly, Defendants' motion to dismiss Plaintiff's claims is **GRANTED** to the extent it seeks to dismiss claims that Defendants violated the CARES Act or PPP. Plaintiff's claim seeking declaratory relief for an alleged violation of the PPP (count I) and Plaintiff's claims seeking relief for violation of the CARES Act and Small Business Administration loan program (counts V and VI) are **DISMISSED WITH PREJUDICE**.

"Finally, [Plaintiff brings] various state law claims, almost all of which are predicated on [Plaintiff's] theory that the PPP entitles them to a portion of the lenders' fees. Largely because the PPP does not entitle plaintiffs to any portion of the lenders' fees (absent an agreement), each of these state law claims fails and must be dismissed."[123]

### 3. Conversion Claim

Plaintiff claims conversion of funds.[124] Plaintiff cannot state a claim for conversion for two reasons: Plaintiff is not entitled to the funds and, even if Plaintiff was so entitled, Defendants' obligation would be dischargeable by ordinary payment of indebtedness, so a claim for conversion, which must designate specific chattel, would not obtain.

First, a claim for conversion requires Plaintiff to show that "the plaintiff owned, had legal possession of, or was entitled to possession of the property."[125] Plaintiff cannot show an entitlement to the funds for the reasons described in Section III.d.2.

Second, "[m]oney is subject to conversion only when it can be identified as a specific chattel and where there is an obligation to deliver the specific money in question or otherwise particularly treat the specific money. There is no conversion where an indebtedness may be

---

[123] *Johnson*, 2020 WL 5608683, at *9.

[124] Dkt. No. 16 at 15–17, ¶¶ 78–91.

[125] *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 699 (Tex. App.—Dallas 2012, no pet.) (citing *Tex. Integrated Conveyor Sys. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365–66 (Tex. App.—Dallas 2009, pet. denied)).

discharged generally by the payment of money."[126] Plaintiff argues that the agent fees "are a segregated portion of the Lender Fees awarded through the SBA Regulations for a successfully funded PPP loan," in that the Small Business Administration transferred to Defendants three separate portions of loan funding, lender fees, and agent fees,[127] but Plaintiff's argument is equivalent to alleging entitlement to commission fees that a Texas Court of Civil Appeals has already rejected.[128] Plaintiff's claim could be discharged by an ordinary payment of money, therefore Plaintiff cannot state a claim for conversion.[129]

Defendants' motion to dismiss is **GRANTED** to the extent it seeks to dismiss Plaintiff's claim for conversion. Plaintiff's claim for conversion (count III) is **DISMISSED WITH PREJUDICE**.

### 4. Implied Contract Claim

"To state a claim for breach of an implied contract, a plaintiff must plead the existence of a valid implied contract, performance or tendered performance by the plaintiff, breach of the implied contract by the defendant, and damages resulting from the breach."[130] The elements to establish the existence of an implied contract are the same as those to establish an express contract, namely, "(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding."[131]

Plaintiff argues that the elements of an implied contract can be inferred because Defendants participated in the PPP loan program "with the knowledge that the CARES Act and

---

[126] *Encinas v. Jackson*, 553 S.W.3d 723, 727 (Tex. App.—El Paso 2018, no pet.) (citation omitted).
[127] Dkt. No. 28 at 28.
[128] *Taylor Pipeline Constr., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 708 (E.D. Tex. 2006) (citing *Gronberg v. York*, 568 S.W.2d 139, 144–45 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.).
[129] *Id.* (collecting cases).
[130] *Electrostim Med. Servs. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015).
[131] *Id.* (quoting *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

SBA regulations obligated Defendants to pay the Agent Fees set by statute."[132] For the reasons set forth in Section III.d.2, *supra*, Plaintiff's argument is incorrect and neither the CARES Act nor SBA regulations obligated Defendants to pay agent fees to Plaintiff in the absence of a compensation agreement. Accordingly, Plaintiff has failed to state a claim for breach of an implied contract[133] and Defendant's motion is **GRANTED** to the extent it seeks to dismiss this claim. Plaintiff's claim for breach of an implied contract (count IV) is **DISMISSED WITH PREJUDICE**.

### 5. *Unjust Enrichment Claim*

Plaintiff claims unjust enrichment.[134] Plaintiff cannot state a claim for unjust enrichment for two reasons: Plaintiff cannot maintain a theory of unjust enrichment without other prevailing claims for relief, and the Court finds Defendants' retention of fees is not unjust.

First, unjust enrichment is not an independent claim for relief but rather a "theor[y] of recovery tied to other claims for relief and relevant to damages calculations."[135] Without any other prevailing claims to relief, Plaintiff is not entitled to unjust enrichment recovery.

Second, "[a]n action for unjust enrichment is based upon the equitable principle that a person receiving benefits which were unjust for him to retain ought to make restitution."[136] In other words, "[u]njust enrichment occurs when 'the person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable

---

[132] Dkt. No. 28 at 30.

[133] *See Thymes v. Gillman Cos.*, No. 4:17-cv-02834, 2018 WL 1281852, at *2, 2018 U.S. Dist. LEXIS 38817, at *5–6 (S.D. Tex. Mar. 9, 2018) (Lake, J.) ("Because Plaintiff has not pled facts that would plausibly support the elements of a breach of implied contract, Plaintiff fails to state a claim upon which relief may be granted.").

[134] Dkt. No. 16 at 14–15, ¶¶ 66–77.

[135] *Martinez v. Ethicon Inc.*, No. 7:19-cv-00164, 2020 WL 2113638, at *4 (S.D. Tex. May 1, 2020) (Alvarez, J.) (citing *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.)).

[136] *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 927 (Tex. App.—Fort Worth 1994, writ denied).

to retain.'"[137] "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."[138] If a complaint fails to "allege any conduct by [the defendant] that could be described as fraud, duress, or undue advantage," it fails to state a claim for relief.[139] Plaintiff's argument that Defendants took an undue advantage is entirely predicated on Defendants' alleged unjust withholding of agent fees,[140] specifically that Defendants allegedly "knew that the Agents were doing the work required to facilitate the loans [and] were entitled to be paid for their work" but nonetheless withheld agent fees.[141]

The Court holds that, even if Plaintiff advantaged Defendants by facilitating PPP applications, Defendants' retention of Plaintiff's claimed agent fees is neither an undue advantage nor unconscionable. "Unjust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant."[142] As an equitable theory of recovery, unjust enrichment necessitates some affront to "the sense of justice, decency, or reasonableness."[143] The Court declines to exercise its equitable powers to award Plaintiff fees when Plaintiff did not comply with the proper procedure to demonstrate its entitlement to agent fees. The Court finds Defendants' retention of fees does not affront justice, decency, or reasonableness because Plaintiff was never entitled to the fees.

---

[137] *In re Estate of Wallace*, No. 04-05-00567-CV, 2006 WL 3611277, at *3 (Tex. App.—San Antonio Dec. 13, 2006, no pet.) (alterations in original) (quoting *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi 1987, writ denied)).

[138] *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

[139] *Great Lakes Directional Drilling, Inc. v. CCI Sys.*, No. 2:14-cv-272, 2015 U.S. Dist. LEXIS 138960, at *3 (S.D. Tex. Oct. 13, 2015) (Ramos, J.).

[140] Dkt. No. 28 at 26–27 (citing Dkt. No. 16, ¶¶ 67, 69, 72, 74–75).

[141] *Id.* at 26.

[142] *Heldenfels Bros.*, 832 S.W.2d at 42 (quotation omitted).

[143] *Unconscionable*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see In re Estate of Wallace*, No. 04-05-00567-CV, 2006 WL 3611277, at *3 (Tex. App.—San Antonio Dec. 13, 2006, no pet.).

Accordingly, Defendants' motion to dismiss is **GRANTED** to the extent it seeks to dismiss Plaintiff's claim for unjust enrichment. Plaintiff's claim for unjust enrichment (count II) is **DISMISSED WITH PREJUDICE**.

### 6. Class Action Allegations

Plaintiff makes class action allegations and seeks to represent a class of similarly situated individuals and entities.[144] The Court is to determine "maintainability of the class action at what has been called the earliest pragmatically wise moment."[145] However, even if the Court denies the lead plaintiff's claim, such a finding does not necessarily "preclud[e] their serving as adequate representatives" of the class.[146] "The relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation."[147] Accordingly, because Defendants do not move to dismiss Plaintiff's class allegations,[148] the Court assumes Defendants do not challenge Plaintiff's ability to represent a class of similarly situated individuals. Nevertheless, "[i]n determining whether a party would be an adequate class representative, courts [inquire] whether the representative's interests are coextensive with those of the class."[149] Plaintiff as class representative must satisfy Federal Rule of Civil Procedure 23(a), but the Court doubts that Plaintiff can serve as an adequate class representative. Accordingly, the Court's September 4, 2020 order staying discovery remains in effect,[150] and parties shall appear at the initial pretrial and scheduling conference on **November 10, 2020, at**

---

[144] Dkt. No. 16 at 10–13, ¶¶ 49–60.

[145] *Huff v. N.D. Cass Co. of Ala.*, 485 F.2d 710, 712 (5th Cir. 1973) (en banc) (quotation omitted).

[146] *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1112 (5th Cir. 1978).

[147] *Id.*

[148] *See* Dkt. No. 18.

[149] *In re S. Cent. States Bakery Prod. Antitrust Litig.*, 86 F.R.D. 407, 417 (M.D. La. 1980); *see E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quotation omitted) ("As this Court has repeatedly held, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.").

[150] Dkt. No. 25.

**9:00 a.m.** to discuss whether Plaintiff is ready, able, and willing to serve as an adequate class representative.

## IV. CONCLUSION AND HOLDING

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for judicial notice[151] and **GRANTS** Defendants' motion to dismiss.[152] The Court **DISMISSES WITH PREJUDICE** Plaintiff's claims for relief in their entirety. Nevertheless, Plaintiff's amended complaint[153] is not dismissed, this case is not terminated, and parties are to assess the maintainability of Plaintiff's class action and be prepared to present on the issue at the November 10th conference or else file dismissal documentation. Parties must still file their joint discovery/case management plan no later than **October 30, 2020**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 14th day of October 2020.

_____
Micaela Alvarez
United States District Judge

---

[151] Dkt. No. 29.
[152] Dkt. No. 18.
[153] Dkt. No. 16.